## PRDJUN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 16, 1916.)

No: 2813.

1. PROSTITUTION ⬅2—WHITE SLAVES—OFFENSES.

Where defendant enticed a girl from one state to another for commercial immoral purposes, but the girl, though enticed to go, did not know of the purpose for which she was intended, defendant was guilty of a violation of White Slave Traffic Act June 25, 1910, c. 395, 36 Stat. 825 (Comp. St. 1913. §§ 8812–8819).

[Ed. Note.—For other cases, see Prostitution, Dec. Dig. ⬅2.]

2. CRIMINAL LAW ⬅663—TRIAL—INSPECTION OF DOCUMENTS.

Where it is proposed to introduce in evidence a letter, it should be tendered to the opposing side for inspection as soon as identified.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1602; Dec. Dig. ⬅663.]

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CRIMINAL LAW ⊷1166½(1)—TRIAL—INSPECTION OF DOCUMENTS.

On cross-examination, a letter written by the husband of the defendant in a foreign tongue, with which defendant's attorney was unfamiliar, was offered; but the attorney's request that the translation be read to him before being read in open court was denied. *Held* that, as the letter went only to the credibility of the witness under cross-examination, accused was in no way prejudiced in cross-examination, and so the denial of the request was not reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3119–3122; Dec. Dig. ⊷1166½(1).]

4. CRIMINAL LAW ⊷1170½(5)—APPEAL—HARMLESS ERROR.

In a prosecution for violating the White Slave Traffic Act, where a witness for the government on direct examination stated that defendant ran a disorderly house, the refusal of the court to require the witness to answer questions as to who had made complaints to him concerning the nature of the place was not reversible error, where the witness admitted that his statement was based on complaints made by others living in the locality.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3133; Dec. Dig. ⊷1170½(5).]

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Katherine Prdjun, alias Katherine Prodjan, was convicted of violating the White Slave Act, and she brings error. Affirmed.

I. J. Pettiford, of Detroit, Mich., for plaintiff in error.

John E. Kinnane, U. S. Atty., of Detroit, Mich.

Before KNAPPEN and DENISON, Circuit Judges, and McCALL, District Judge.

McCALL, District Judge. This case was tried to a court and jury on an indictment charging the appellant with violating the fourth section of the Act of Congress of June 25, 1910, commonly referred to as the "White Slave Traffic Act." There was a verdict of guilty and judgment of the court thereon. The case is here on writ of error.

There were 26 errors assigned, but only 3 were discussed either in the brief or at the hearing, and we shall consider only those discussed.

[1] The twenty-sixth assignment is that the court erred in not directing a verdict in favor of the appellant, on the ground that the evidence does not support the charge in the indictment. Particularly is it urged that there is no evidence that the girl Zorka Adzics knew the purpose for which she was enticed to go from the city of Newark, Ohio, to the city of Detroit, Mich., and that such prior knowledge on her part must be shown before there could properly have been a conviction. A line of cases, which it is not necessary to state, is cited to support this contention. We think they are not applicable. The court below correctly charged the jury in substance: If the appellant put the girl in question in such a frame of mind that she wanted to go and did go, if coupled with it was the purpose on the part of the appellant

that the girl should engage in prostitution—sexual immorality—when she got to Detroit, then that is an offense against the statute; but without that purpose on the part of the appellant there would be no offense. An attentive examination of all the evidence presented in the record leads us to conclude that there is no merit in this assignment. The jury were well warranted in finding that the defendant brought the girl in question into the state for purposes of sexual immorality.

[2] The eighteenth assignment rests upon the ground that the court refused the request of appellant's counsel to have the interpreter read to him a certain letter, to enable counsel to see whether it was material, before it was openly read (in translation) upon the trial. The letter in question purported to have been written by Steve Prdjun, husband of the appellant and a witness for her, to Zorka Adzics, a witness for the government, the girl whom, it was alleged, the appellant enticed to go from the city of Newark, in the state of Ohio, to the city of Detroit, in the state of Michigan, for certain immoral purposes. The letter was written in the Croatian language, with which counsel for the appellant was not familiar. It was translated for the court and jury by an interpreter.

A letter so proposed to be introduced should be tendered to the other side for inspection as soon as it has been identified. Morris v. United States, 149 Fed. 123, 80 C. C. A. 112, 9 Ann. Cas. 558; United States v. Wong Quong Wong (D. C.) 94 Fed. 832; Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. In this way counsel is informed of the contents of the paper offered, and this is, as we think, the proper practice.

[3] In the case at bar, however, it would have been a mere formality to have passed the letter in question to appellant's counsel, since he could not have read it. It is conceded that the proceedings on the trial were stenographically reported, and, on the letter being read, defendant's counsel had complete right of access to the translation. We have examined the contents of the letter, as its translation appears in the record, and are persuaded that the letter should have been admitted, had objection thereto been made, and that appellant was in no way prejudiced in cross-examination by the refusal to permit counsel to hear it translated before it was read aloud, especially since the contents of the letter go only to the credibility of the witness under cross-examination. There was thus no reversible error in the action complained of.

[4] The eleventh assignment is to the effect that the court erred in excluding certain questions asked William Black, a government witness, on cross-examination. It appears that Black had charge of the supervision of the vice district in the city of Detroit, and, among other things, in reply to a question on direct examination, whether he knew anything "professionally" about defendant's house, said that it was a house of prostitution, giving, however, on direct examination, no testimony as to the source of such knowledge or information. On cross-examination he testified that he knew nothing about the character of the place previous to a "shooting" which occurred about December 19th; that once before the arrest (which was made February 25th) he

had been at the place on complaint of the neighbors that defendant was running a disorderly house; that he did not know who made the complaint, that he got it through the superintendent, and that was all he knew about it. Being further cross-examined, he said he talked with some of the people who made the complaint about the place. In reply to a question whether he knew who they were, he said that one was Zagarach (who had already testified); that another suggested by the cross-examiner was not one of those who had complained, adding:

"I have talked with several people, about whom I will not give information, because they are people of the neighborhood, and they would not care to have me do so."

In reply to a question whether he wished to say that the house was "a place of prostitution, because Mike Zagarach and somebody else came up to see you once and complained about it," he answered, "That is enough, isn't it? * * * They go there for that purpose." He made it clear, however, that his only knowledge was based upon the fact that "they told him it was true." Complaint is made of the exclusion of the inquiry as to what other persons witness talked to except Zagarach, and how many times "these people" were "to see you about this place." We think that, in view of the entire examination, the exclusion of these questions worked no reversible error, if, indeed, it was not within the discretion of the trial court.

We find no reversible error. Affirmed.